IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 21, 2001 Session

## JUDITH DIANE GREER v. EDWIN DANIEL GREER

**Direct Appeal from the Chancery Court of Benton County No. 9819;**
**The Honorable Ron E. Harmon, Chancellor**

---

**No. W2000-02881-COA-R3-CV - Filed February 22, 2002**

---

This appeal arises out of a divorce action filed by the parties in Benton County, Tennessee. Edwin Daniel Greer ("Husband") appeals the trial court's decision awarding the parties' marital residence to Judith Diane Greer ("Wife"), ordering Husband to pay rehabilitative alimony for four years, and awarding attorney's fees to Wife. We reverse the trial court's decision awarding the marital residence and the adjoining 9.4 acres to Wife and remand for further action by the trial court. We affirm the trial court's decision awarding Wife rehabilitative alimony and an attorney's fee of $3,000.00. We remand the case to the trial court for the amount and duration of rehabilitative alimony.

**Tenn. R. App. R. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part,
Reversed in Part and Remanded**

ROBERT L. CHILDERS, SP. J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

L.L. Harrell, Jr., Trenton, TN, for Appellant

W. Brown Hawley, II, Paris, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Wife filed a Complaint for divorce on May 21, 1999. Husband filed an Answer and Counter-complaint on June 14, 1999. Temporary child support and visitation was ordered on June 15, 1999. Wife filed an Answer to the Counter-complaint on September 14, 1999. The Final Decree of Divorce was entered on October 18, 2000.

The parties were married on May 5, 1984. They have three children born of the marriage, ages twelve, nine, and five. At the time of divorce, Husband was forty-one years of age, and Wife was thirty-five. Wife owned no property before the marriage except for her clothing.

Husband owned a mobile home, cattle, real estate, farm equipment, two motor vehicles and guns before the marriage. Shortly after the marriage, a house was built on 9.4 acres of land that was owned by Husband's father, Eulas Greer. In 1989, Eulas Greer deeded Husband this land in exchange for a 10 acre tract of land that Husband owned before the marriage. The deed to the 9.4 acres on which the marital residence was built made no mention of Wife having an interest in the real estate. The house was built with funds from Husband's savings prior to the marriage, the sale of Husband's cattle that he owned with his father before the marriage and with money given to him by his father. There was never a mortgage on this property. During the marriage, Husband purchased a 110 acre parcel of real estate (Bain farm) with his business partner. The business partner later transferred his one-half interest in the Bain farm to Husband and his father. There were also two other parcels of real estate that Husband and his father purchased during the marriage: one 18 acre parcel and one 8.3 acre parcel. The Chancellor found that these two parcels had little or no equity. There was also a promissory note owed to Husband for $35,000.00, and farm, equipment, motor vehicles, household goods, furniture, appliances, guns, jewelry and personal belongings, all of which the Chancellor found to be marital property.

The Chancellor awarded Wife the marital residence and the 9.4 acre tract. He also awarded Wife a 1991 Ford Escort automobile, certain items of household goods, furniture, appliances, jewelry and personal belongings, but did not place a value on any of these items. The Chancellor ordered Husband to pay Wife rehabilitative alimony of $400.00 per month for forty-eight (48) months, the sum of $1,250.00 for Wife's one-half equity interest in a tractor, and a $3,000.00 attorney's fee. Husband was also ordered to pay child support of $150.00 per week, which was not appealed.

The Chancellor awarded Husband the Bain farm and the $35,000.00 promissory note receivable. He also awarded Husband the guns, several motor vehicles, several pieces of farm equipment, and certain items of household goods, furniture, appliances and personal property, but did not place a value on any of these items. The Chancellor also divested Wife of any interest she had in the 18 acre and the 8.3 acre parcels of land.

Husband has appealed the Chancellor's decision awarding the marital residence and the 9.4 acres, $400.00 per month rehabilitative alimony for forty-eight (48) months, and the $3,000.00 attorney's fee to Wife.

**Issues**

The issues presented for our review are:

1. Did the trial court err in classifying the marital residence and the surrounding 9.4 acres as marital property and awarding it to Wife?
2. Did the trial court err in awarding the Wife $400.00 per month in alimony for forty-eight (48) months?
3. Did the trial court err in ordering Husband to pay Wife a $3,000.00 attorney's fee?

**Standard of Review**

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. R. 13 (d). ***Brooks v Brooks,*** 992 S.W. 2d 403,404 (Tenn. 1999). Review of questions of law is *de novo* , without a presumption of correctness. See ***Nelson v. Wal-Mart Stores, Inc.***, 8 S.W. 3d 625,628 (Tenn. 1999). Review of the trial court's conclusions based on undisputed facts are also *de novo,* without a presumption of correctness. ***NCNB Nat'l Bank v Thrailkill***, 856 Sw 2d.150,153 (Tenn Ct. App. 1993).

**Law and Analysis**

1.      **Did the trial court err in classifying the marital residence and the surrounding 9.4 acres as marital property and awarding it to Wife?**

Because Tennessee is a "dual property" jurisdiction, trial courts must first classify the parties' property as either separate or marital before equitably dividing the marital estate. ***Batson v. Batson***, 769 S.W.2d 849, 856 (Tenn. App.1988). Proper classification of a couple's property is essential. **Id.** at 856.

Separate property is defined in TENN. CODE ANN. § 36-4-121(b)(2) as:

(A) All real and personal property owned by a spouse before marriage;
(B) Property acquired in exchange for property acquired before the marriage;
(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and
(D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

Marital property is defined in TENN. CODE ANN. Section 36-4-121(b)(1) as:

All real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

"Marital property" includes income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation

-3-

and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

. . .

(D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

The trial court made the following remarks concerning the marital residence and the 9.4 acres:

> The Court finds the house and nine acres or at least the nine acres where the parties' marital residence is located was owned by the husband's father. Prior to the marriage, the husband owned a separate parcel or tract of land of approximately 10 acres which he traded for the land where the house exists. The Court finds the value at the time of the trade to be $2,000.00 according to the affidavit on the deed signed by Mr. Eulis(sic) R.Greer as reflected in Exhibit 22. The stipulation as to value of $84,000.00 being the value of the improved property will be reduced by the $2,000.00 of premarital property of the husband. The balance would be one-half each.

Although the Chancellor did not specifically find that the marital residence and the surrounding 9.4 acres was marital property, that finding is implicit in his ruling since he awarded the marital residence and the 9.4 acres tract to Wife.

A trial court is afforded wide discretion when equitably dividing marital property between divorcing parties, and its distribution will be given "great weight" on appeal. *Ford v. Ford*, 952 S.W.2d 824, 825-826 (Tenn. Ct. App. 1996). However, before it can be subject to the court's powers of equitable division, property must first qualify as marital property. *Cutsinger v. Cutsinger*, 917 S. W. 2d 238, 241 (Tenn. Ct. App. 1995).

In this case the construction of the marital residence began a few weeks after the parties married, on land owned by Husband's father. In 1989 Husband exchanged with his father a 10 acre tract of land he owned before the marriage, for the 9.4 acre tract owned by his father, on which the marital residence was located. This exchange of property during the marriage remained the separate property of Husband. TENN. CODE ANN. § 36-4-121(b)(2)(B). At no time during the marriage did Wife have title to the real estate. There was evidence in the trial court that Husband used his savings and proceeds from the sale of cattle owned before the marriage, a total of $32,000.00, in the construction of the marital residence. However, Husband and his father also testified that the father had given Husband money to build the house. While the father testified that he had given Husband several checks, he also testified that Husband had

written checks from the Greer and Greer account for construction of the house. Greer and Greer was a partnership between Husband and his father that began operating prior to the marriage. The father also testified that he had used his tools and "paid some hands that worked on the building." The total amount of money given by Husband's father was never established. It appears from the record that Wife does not dispute that the money from Husband's father was a gift from the father to Husband alone. Property acquired by a spouse at any time by gift is deemed to be separate property. TENN. CODE ANN. § 36-4-121(b)(2)(D). Since Husband used his separate property, his savings, proceeds from the sale of cattle owned before the marriage, and gifts from his father, for the construction of the marital residence, the residence and the 9.4 acre tract remained his separate property.

Although this property remained Husband's separate property the Chancellor could have awarded Wife an equitable interest in the property upon a proper showing by Wife that there was an increase in the value of the marital residence and the 9.4 acres, by proving the amount of the increase in the value of the property during the marriage, and that she had made a substantial contribution to the increase in value. TENN. CODE ANN. § 36-4-121 (b)(1)(B). If a nonowner spouse can show that she made a substantial contribution to the preservation and appreciation of a piece of separate property, the trial court may grant the nonowner spouse an equitable share of the increase in value of that property. *Id.* at 241.

We agree that, based on the evidence offered at trial, the Chancellor could have found that Wife made a substantial contribution to the preservation and appreciation of the marital residence. However, in order to prove such an appreciation or increase in the value of separate property, a nonowner spouse must present evidence that proves the value of the separate asset prior to the marriage. *Id.* "One who claims an interest in the increase in value of the separate property of his spouse has the burden of showing the amount of such increase." ***Bryson v. Bryson***, App. No. 88-94-II,1988 WL 87685 at * * *3 (Tenn. Ct. App. Aug. 26, 1988). If there is no proof of the value of a separate asset, the trial court has no legitimate basis to determine that an asset has appreciated. *Id.* Thus , a trial court cannot make an equitable distribution of the alleged appreciated value of that particular asset. *Id.* Although the marital residence was constructed shortly after the parties' marriage, it was built with Husband's separate property. In order to establish the value of the marital residence it was necessary for Wife to prove either the fair market value of the residence at the time it was constructed or the total amount of money used to construct the marital residence. Wife failed to prove either.

Although the Chancellor found that the fair market value of the 9.4 acres at the time of the exchange in 1989 was $2,000.00, there was no evidence offered at trial to establish the fair market value of the marital residence at the time of its construction, nor was there sufficient evidence to prove the total amount of the funds used to construct the marital residence. We find that the evidence preponderates against the trial court's classification of the marital residence and the 9.4 acre tract as marital property. The trial court erred in awarding the 9.4 acres and the marital residence to Wife as marital property. We find this property to be Husband's separate property.

As to the remaining assets, the Chancellor made the following distribution:

> The husband will receive all other real property, including the Bain farm, the 18 acres and any interest [Wife] might have in the eight point three acres. Wife will receive the furnishings in the house listed on Exhibit Eight as marital. The husband will receive the items in the house that are items either owned by him prior to the marriage or that are listed as his separate property.
>
> . . . The husband will receive his firearms that are located in the house; the wife will receive the '91 Ford Escort; the husband will receive the remaining vehicles. The Court finds that [Husband] has an interest in these vehicles, at least half, the undisputed proof is that the vehicles came through Greer and Greer which he claims and which his father claims to be a -- or at the time this was done, to have been a joint equal partnership.
>
> . . . The tractor and the remaining farm equipment will go to the husband. The only allowance made for the wife is on the tractor; she will receive [$1.250] for her interest in the tractor. . . The Court finds that there is a marital interest in the tractor aforementioned; the GMC pickup which is awarded to the husband and the Chevrolet pickup, the two-ton International, the tractor and various -- the bailer, cutter, parts washer, hay rake and feed grinder. . . The Court finds the wood-mower -- and I -- if that's the bushhog that Mr. Greer, Sr. spoke of -- I'm assuming it is: he said it was. I don't think a bushhog and a woods mower are the same piece of equipment, but -- all those items the wife has a martial (sic) interest in will be divested out of her and vested in the husband.

With the exception of the Bain farm property and the tractor, the trial court placed no values on the items determined to be marital property. The parties do not dispute that the Bain farm property is marital property, nor do they dispute that Husband's father owns a one-fourth undivided interest in this property. However, the Chancellor did not recognize the father's one-fourth interest in his ruling establishing the value of the marital interest in the Bain farm property. The Chancellor stated that "[t]he Bain farm, the Court finds to be marital property, $82,700.00 by stipulated value. It'll be $41,350.00 each, virtually the same as the house and nine acres."

Having reviewed this record, we find that the trial court erred in its classification of the marital residence and the 9.4 acres as marital property. We also find that the trial court failed to place a value on all of the marital property. As a result we find it necessary to remand this action to the trial court for a determination of the values of the marital assets and an equitable of them according to the factors enumerated in TENN. CODE ANN. § 36-4-121 (c)(1-11).

-6-

**2.     Did the trial court err in awarding Wife $400.00 per month in alimony for forty-eight (48) months?**

Trial judges have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. ***Kinard v. Kinard***, 986 S.W.2d 220,234 (Tenn. Ct. App. 1998). Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. ***Id.***

Wife was thirty-five years old at the time of trial. She had a high school education, and had worked outside of the home for one to three years after the parties married. After that she helped with the farm until she started caring for Husband's grandmother for which she was paid up to $315.00 per week. At the time of trial she had been caring for an elderly woman, earning $7.00 per hour, working five to seven hours per day on Monday, Wednesday and Friday and every other weekend. Wife is also in good health. Her affidavit showed that her monthly expenses totaled $1,238.83. This amount did not include any rent or house payment. Husband had been employed throughout the marriage as a welder, and the Chancellor found that Husband had an earning capacity of $10.00 per hour. The parties were married for 16 years.

When deciding whether rehabilitation is possible, and, in general, determining the proper form and amount of alimony, courts must consider the "relevant factors" set forth in TENN. CODE ANN. § 36-5-101(d)(1)(A) through (L), but "the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." ***Aaron v. Aaron***, 909 S.W.2d 408, 410 (Tenn. 1995).

After considering the factors enumerated in TENN. CODE ANN. § 36-5-101 (d)(1)(A-L), the Chancellor properly awarded Wife rehabilitative alimony. However, we will remand the issue on the amount and duration of the rehabilitative alimony to the trial court, in light of our finding that the marital residence and the 9.4 acre tract is Husband's separate property, to give the trial court the opportunity to review the amount and duration of the rehabilitative alimony based on the new equitable division of marital assets.

**3.      Did the trial court err in ordering Husband to pay Wife a $3,000.00 attorney fee?**

The record reveals that Wife incurred attorney's fees and expenses in the amount of $3,268.37. The Chancellor awarded her an attorney's fee of $3,000.00. Attorney fee awards are treated as alimony. ***Gilliam v. Gilliam***, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). In determining whether to award attorney's fees, the trial court should consider the relevant factors in TENN. CODE ANN. § 36-5-101(d)(1). ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. Ct .App. 1992). Where the wife demonstrates that she is financially unable to afford counsel, and where the husband has the ability to pay, the trial court may properly order the

husband to pay the wife's attorney's fees. *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1988). These awards are within the sound discretion of the court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988). We find the award of attorney's fees to be proper and affirm the trial court.

### Conclusion

The judgment of the trial court awarding the marital residence and 9.4 acres to Wife is reversed. The trial court's judgment awarding rehabilitative alimony and attorney's fees to Wife is affirmed. The cause is remanded to the trial court for a determination of the values of all marital assets, an equitable distribution of the marital assets, and to determine the amount and duration of rehabilitative alimony consistent with this opinion. Costs of this appeal are taxed equally to the Appellant, Edwin Daniel Greer, and his surety, and Appellee, Judith Dianne Greer, for which execution may issue if necessary.

_____
ROBERT L. CHILDERS, SPECIAL JUDGE